Next matter, number 24-1841 and number 24-1842, United States versus Reynaldo Rosa-Borges. At this time, would counsel for the appellant please introduce herself on the record to begin. Good morning and may it please the court, Assistant Federal Public Defender Jessica Earl on behalf of Mr. Rosa-Borges. May I please request two minutes for rebuttal? May. The district court violated this court's mandate in Rosa-Borges I by once again considering the unreliable March 30th allegations. The district court was induced to do so by the government's breaching advocacy. The practical effect of this error, Your Honor, is that the district court once again imposed a massive upward variance and Mr. Rosa remains sitting in federal prison. This court should vacate and remand Mr. Rosa's case for resentencing with a different district court judge. I'd like to focus my time today on the first issue about the mandate violation. In Rosa-Borges I, this court determined after a painstaking evaluation of the factual record that the March 30th allegations were unreliable and because clients like Mr. Rosa have a due process right to be sentenced on reliable information, the March 30th allegations could not stand and be used in sentencing period. The government's assertion that this court in Rosa-Borges I merely held that the March 30th allegations were not enough in and of themselves to solely impose an upward variance flatly contradicts Rosa-Borges I. Rosa-Borges I never suggested that the discredited evidence could be considered in combination with other factors that would be a non sequitur. If the March 30th allegations are unreliable, they should not have been used in sentencing period. Counsel, but what are we to make of your arguments given that the district court said very clearly on the record that it was not considering those allegations, that it was sentencing completely apart from them and it was following our decision? So that sentence by the district court that it was not considering first was made only after a objection was lodged by defense counsel about the consideration of the high amount of ammunition. So it's sort of a post-hack realization. A statement like that has to be read in consideration of the record as a whole and there are multiple instances in this record that point to showing that the district court violated the mandate. For example, we have the government's sentencing memorandum in this case which the district court said it reviewed and considered as part of its sentencing analysis and the government spends a page of its memorandum talking about the March 30th allegations as new criminal conduct. In its sentencing memorandum the government insinuates to the district court that we have additional evidence about the 100 additional bullets but we won't present it. Counsel, let me ask you about that because I read it and I'm just, it'd be helpful to get your view why that's the only reading of it because I read the memorandum and I read it as one potential interpretation could be that the government was actually trying to go out of its way to make clear that it was going to follow our decision and therefore it would not be relying in any way or attempting to prove with any new evidence the allegations that we said were unreliable. So why would we need to read it the way that you are reading it? The district courts in this case, Judge Rickleman, ordered resentencing memorandum. So the government did have to file something along with defense counsel but there was no reason to rehash the March 30th allegations. It is well accepted in this circuit's case law that there's no de novo on resentencing so it's up to the district court that was already inclined and the government knew it was already inclined based on the massive upward variance they got on round one to say out of an abundance of caution we are not going to bring additional evidence, cast a shadow or a doubt over the entire sentencing. I don't think there's any reason to put that in the sentencing memorandum coupled right after the part about rehashing the March 30th allegations in a heading of new criminal conduct than to bring it to the court's attention that possibly there exists. And worse still, we get to the sentencing hearing and they bring nothing in addition to Naeem's statement that was already discredited by this court. This sounds like this would go more to the breach claim. Yes, the reason I'm arguing that the district court considered it is because it mentioned that it reviewed the government's sentencing memorandum. It also mentioned that it reviewed the government's arguments. But if we just turning to the breach issue for a moment. Sure. The contention is that the statement based solely on etc. was effectively an argument to the district court that it could rely on what we deem to be the unreliable evidence for some purpose at sentencing and that itself is a breach of the agreement? So that's not the only issue in this case that it could in and of itself rely on others. The breach we understand has a couple issues here. The sentencing memorandum in and of itself. Remember in this case the government agreed that a lower half of the guidelines was appropriate here. The government was on notice already by this court that the March 30th allegations were a no-go. So the memorandum's inclusion in those two instances in the... You could read the memorandum just as a saying, you don't rely on this, but the PSR states this, but that's just what the PSR states. If we credit all that and said that's not a breach. There is the statements, and I forget, are they in the memorandum or are they only at argument where the prosecutor is saying to the judge, you can't rely on it solely for this purpose, but does seem to suggest that it could be relied on it for some purpose. That's at sentencing, Your Honor, so... I mean that would be potentially an independent source of the breach. Yes, I think it comes after the filing of the memorandum, but by the time we get to sentencing, the government is warping the mandate to the district court by saying, no, no, no, Rosa Bortez 1 doesn't say that you can't consider it. So, and that's after defense counsel requested that paragraph 13 be once again excluded from the PSR? Yes, I'm just trying to think, for purposes of a breach claim, it's kind of a unusual type of breach, because if we thought there was no breach in the actual recommendation, in other words, the sentence that they're arguing for is consistent in terms of the term of sentence that they're recommending with what the agreement said, and they're not saying go above that. The breach here, if I'm following, is the suggestion that unreliable evidence could be considered, and that's just an implicit term of the plea agreement that the prosecutor won't be asking the judge to rely on unreliable evidence. That's the idea? Yes, and not only that it could be considered, that it could be considered in combination with other factors to upwardly vary with the word spoken twice. That, to us, is the most devastating part of the argument for the government. But the request for upward bearing, just so I understand, that's not necessarily inconsistent with the, is that phrase alone inconsistent with the plea agreement? The government explicitly said it was standing by the plea agreement and recommending the lower half of the guidelines. And would that be, in saying you could do an upward variance, is that therefore itself necessarily inconsistent with what the agreement said it would recommend? Yes, our understanding would be it is, because the government was already on notice by this court that this court found its advocacy as to that issue troublesome the first go-round, and here we are again where the government knew that the district court had used those unreliable allegations. I guess what I'm saying, if you upwardly varied, would you necessarily be doing, you'd be necessarily going above the lower half of the guideline range? So just that statement alone is you're taking it, saying a recommendation to do something inconsistent with what they had agreed to recommend? Yes. If the court has no additional questions as to the breach, I can address the... Just last thing on the breach, your client is, I take it, aware of the consequences of winning on the breach argument? Yes. Yes, Mr. Rosa has been with the Public Defender's Office, yeah, since 2021 and is aware of the potential consequences. Okay, thanks. Thank you, counsel. At this time, would counsel for the government please introduce himself on the record to begin? Do you need me to tell you to put you on the record? No. No. Okay, you can start then. Yes. Good morning, Your Honor, and may it please the court, Ricardo Humbert Fernandez for the United States. I'd like to start where my colleague started, which is the mandate issue, unless this court would prefer me to address the breach issue first? I think I would. You would? Okay, then I'll start with the breach, Your Honor. The government did not breach the plea agreement here. The plea agreement here placed only an obligation on the government to advocate for a mid-range guideline sentence, which equated in this circumstance to 37 months. That's exactly what the court did. Now... It doesn't matter what the court did. No, I'm sorry, that's what the government did. Advocate for a 37-month sentence. I misspoke, Your Honor, sorry. And so I guess the two points that I understood your opponent to be raising is the reference to upward variance and the implicit suggestion, as they read the record, that evidence that we had deemed to be unreliable could be relied on, even as to the mid-range sentence. Your Honor, I think context is important. And the prosecutor, and I'm referring to the statements that were made during the sentencing. I'm not talking about the sentencing memorandum at this moment. The statements that were made at sentencing need to be read in context. The defense is asking the court to excise a single paragraph from the PSR that has, I guess, two facts included in there, stating that this court's opinion in Rosa Borges I found that paragraph to be unreliable. But that's simply not true. That's not the government's reading of Rosa Borges I. Rosa Borges I said that the sworn statement of Rosa Borges' brother, Naim, was too unreliable and contradictory to attribute ownership of the extra bullets magazines to Rosa Borges. They don't mention anything about that paragraph, which objectively is accurate and true and uncontested historical fact. There was a search at the home where the bullets and magazines were found. And Rosa Borges' brother did attribute those bullets and magazines to Rosa Borges. What the court could not do, and what the holding of Rosa Borges I was, attribute ownership of those bullets to Rosa Borges. And that's exactly what the... So why does the government say, I'm quoting, we understand that the court cannot rely solely upon the evidence in paragraph 13 in imposing an upward variance. If we've held that the notion that the ammunition, et cetera, belonged to the defendant here was not reliable, doesn't that mean the court can't rely on it for anything? Why would the government be saying you can't rely on it solely for an upward variance? How can it be sort of reliable when we've held it's unreliable? Well, Your Honor, I direct the court's attention to the prosecutor's statements shortly before that where it tells the court in unequivocal terms that the court cannot use that information to enhance the sentence. Saying a fact or information cannot be used to enhance the sentence is the same thing as saying it cannot be used at all. Because these are aggravators. An aggravator will only ever enhance a sentence, right? It doesn't need to be an upward variance, but it will enhance it. Well, but you could... I thought maybe I'm misunderstanding. Isn't there a separate enhancement for ownership? I'm sorry, Your Honor? Is there a separate enhancement under the guidelines? No, Your Honor. The prosecutor was not saying you can't use this to apply an enhancement. It's saying you can't use this to enhance a sentence, right? It's talking about an increasing the sentence just on discretionary terms, not necessarily guideline enhancement. How do we put that together then, if that's what he was saying? Why does he then next say you can't solely rely on it for an upward variance? That suggests you could do an upward variance based on it, in part, as long as it was interacting with other considerations. Your Honor, the prosecutor wasn't telling the court what it could do. The prosecutor was telling the court what it thought this court had said in Rosa Borges. Counsel, you said context is important, and I agree with you on that. So what's happening here in the part of the transcript is that the defense has said, can you please just excise paragraph 13 out of the PSR? And the government is objecting to that. And what the government says in its objection is, we understand that it's not sufficient for the court to rely on that information, and we understand that the court cannot rely solely upon it. I actually read those two statements as consistent to suggest you can't rely just on it, but you can rely on it in combination with other things. And why would that be the government's position after we've held that it's not reliable? I think, Your Honor, taking everything in context with the government's sentencing memorandum and the initial statements at the sentencing hearing, that the government is being quite clear with the court in saying, this is how we understand the remand, and do not consider these at all. Because that's the unequivocal request in the sentencing memorandum and when the prosecutor says you can't use this to enhance the sentence. More importantly One thing there, if the prosecutor had said, look, there's nothing that says it has to come out of the PSR, so there's no reason it has to come out of the PSR, but you cannot rely on it, then it would be fine. The context would be defendants trying to get it out, prosecutors saying you don't have to take it out, but reminding the court and sticking to its requirement to only be asking it to do a mid-level sentence or lower based on reliable evidence if it said what it had earlier said. But instead, in the face of the defendant being concerned about the district court's possible reliance on that for an upward variance, doesn't repeat what it earlier said, which is you can't enhance the sentence based on this, but instead says you can keep it in because all we said was you can't solely upwardly vary based solely on it. So that's the kind of two problems all at once, which is it seems to be suggesting to the district court that it could upwardly vary based on this evidence, and that's a troubling thing for the prosecutor to be suggesting to the district court after both its commitment to be arguing for a mid-range sentence and our decision saying this evidence is unreliable. Your Honor, the context of the prosecution's complete performance, I think, goes against that notion, and also I'd like to remind the court that we are on plain error here, right? So it has to be a clear and obvious error, and that has implications into how we interpret these statements, but furthermore and more importantly, you know, the stronger point I'm trying to make is that Rosa Ortega needs to establish prejudice, and here the record is crystal clear that the court did not consider these extra bullets and magazines. It said so repeatedly throughout the sentencing hearing. That's what I was trying to understand. For plain error for breach, what's the prejudice analysis look like? If the plain error claim was not a breach claim, then it would be a real problem at the prejudice prong for the defendant that the district court did not, in fact, rely on it, but for breach purposes, the question is whether there was a breach. The prejudice that follows from a breach, I thought, was simply that the government didn't live up to its terms of the bargain. So what is the prejudice analysis supposed to look like, and what's the relevance for the prejudice prong on plain error for a breach claim that the district court did not rely on the evidence that the prosecutor, if we assume, was suggesting it could be relied on, suggested? Your Honor, I don't agree with that characterization of how the prejudice analysis would play out. This Court's case law in breach cases consistently states that to establish prejudice, you need to show that the proceeding would have been different, and that is also, may I point out, the way that Rosa Borges states the standard in his brief. Wouldn't the proceeding be different, as I wouldn't have pled if I knew the prosecutor was going to do that? No, Your Honor. I don't think that's a fair conclusion. I thought that's the standard way that we did the analysis. Is that wrong? Your Honor, if, and the government does not concede that happened here, but if the government breaches a plea agreement, right, but the court is unaffected and the record is completely clear that the court is unaffected by that, by the proposed error, then I don't think this court can find prejudice in those circumstances. And here, to the extent the breach claim is solely, well, you were incentivizing or telling the court, yes. Do you have a case that suggests that the relevant question for whether the breach, there's prejudice as to the breach, if breach is shown? Not off the top of my head, Your Honor, but I can say that that is, in the, in Rosa Borges' brief, in the portion where he addresses prejudice and the plain error standard within the context of a breach, he cites the standard as so. He says that the proceeding was different and that the sentence. The relevant question is whether the proceeding would be different if he didn't plea. No, Your Honor, I think, I think that understanding of it would negate, would negate completely the prejudice prong in all breach cases, because in every single case where there's a breach. He'd have to show that, in fact, in the face of the breach, he wouldn't have pled. Well, I don't think he does that either, Your Honor. If that's a proper analysis, I don't, I don't think he accomplished that, accomplishes that either, and I don't think he raises a, a, a single argument to that effect throughout his brief. He, he, he never says that absent the breach, the circumstance, he, he, he would not have entered into a plea agreement with the United States. Counsel, let, let me ask you another question. This, I think, relates both to the breach claim and to some of the other claims. Yes, Your Honor. The defense is making. The district court cites the amount of ammunition here as one of the reasons for the upward variance. Yes. And it's, I think, 30 bullets, if I remember correctly. 31, Your Honor, yes. One in the chamber, right, and 30. Yeah. So, isn't our case law pretty clear that 30 is within the mine run? Yes, Your Honor, that's absolutely right, and the government recognizes that, and, and it's brief, and, and we're not making a contrary argument today. So, but, so how should we analyze, since that seems to be one of the main reasons for the upward variance, the district court repeats it again after the objection, and that does seem inconsistent with our case law, how should we analyze that fact, both in respect to the potential, you know, there are arguments that the district court didn't actually consider the 100 bullets that we said were, and magazines that were unreliable, because the 30 just is clearly not enough under our case law. Can you respond? Yes, Your Honor. Every single time the court makes a reference to, and I think, well, perhaps not every single time, but 90 percent of the times the court makes reference to a high amount of bullets throughout the sentencing hearing, it says that it's referring to the 31 bullets. Right. And I think the point is under our case law, that's not enough to take something out of the mine run. So the defense is saying this is actually an indication that the court was always thinking about the 100. Your Honor, I, I don't think if, if what the record showed was the court simply saying, right, I'm taking into consideration the high amount of bullets, no qualification, no explanation as to what the court meant by that, by that phrase, then, Your Honor, I think the government would, would likely be arguing this in a very different way. Right. But the, that's not what happened. The court is being crystal clear that it's 31 bullets. That might be incorrect under Rivera-Rios to, in and of itself, in and of itself, justify an upward variance. Right. But it's a proper aggravator. 31 bullets is an objectively high amount. Not enough to take a case outside of the mine run, but it's a high amount. The 2K1.2 says that an extended magazine is anything that is capable of holding more than 15 bullets. Here we have over double that. Because it's an objectively high amount. It's a proper aggravator. The court could use it as an aggravating factor at sentencing to either take a sentence to the high end of the guidelines or, the government proposes, it could also play a part with a confluence of other factors that do justify an upward variance. And one of them here is a prior weapons offense, right? I'm sorry, Your Honor. One of them here was a prior weapons offense. Yes, Your Honor. Your Honor. But how do we square that to just follow up on Judge Rickleman's question? It would have been one thing if the district court said there's 31 bullets. That's more than 15. Yes. And there's a weapons offense prior. So together, I'm going to upwardly vary. Yes. Instead, the district court said there's 31 bullets. That's not mine run, which you acknowledge. Our cases say it is mine run. Yes, I agree, Your Honor. Then he goes on and says, and it was a weapons offense. And so the worry is the district court is upwardly varying based on a misapprehension about whether the number of bullets made it a mine run case. If so, why wouldn't we vacate? And this would be, what, the second time we'd vacate? Yes, Your Honor. It would be. It might be just at some point it makes sense. And if we did that, would there be a reason not to assign it to another judge? Well, it depends on the error. If this court were to find an error, it depends on what error it finds, whether it imposes remands to a different judge or not. If it's a breach error that the court finds, which we don't think it should, then of course it needs to go back to a different judge. But if it's simply a matter of you made an incorrect statement of the law, I think – Just a little bit of unusual circumstances. No critique of the judge, but since the thing that was – the worry is that there is unreliable evidence in the shadow here about the number of bullets, and this is so related to it. If this is the second time we're remanding, wouldn't there be some logic to just make sure that the judge who now sentences isn't going to be affected by a prior understanding that that large number of bullets, which would have made it non mine run, isn't actually to be considered? No, Your Honor. I disagree. I think the court is entirely capable of applying any court – any mandate this court sends with a remand as in the government's view the court did here. I think the court was crystal clear that it was taking great pains to follow this court's remand. It mentions before it goes into sentencing, it says, I am not – I considered this court's opinion in order. Then it goes throughout sentencing. It says, I'm considering only 31 bullets. It says so a couple of times. Then after an objection, the court reiterates. It says, I'm not considering the 100 bullets and extra magazines. I'm considering the 31 bullets. And then at another point after the objections are made, the court says, I am not considering the facts, the bullets that the First Circuit said were unreliable. So I think – I just have one more question about the sentence. The judge also specifies the caliber of the bullets here. Yes. And that they're used as weapons of war somewhere. But I'm wondering that caliber of bullets, does that – like does – how does that take this out of the mine run or does it? Your Honor – I just didn't know how to understand his comment. I think he's looking at both the quantity and the type of bullets together, right, and making an assessment as to how the court feels about that. But quantity aside, does the type of bullets take it out of the mine run? Your Honor, again, I don't think it has to, right, to be a proper sentencing consideration. The court was troubled by it. The court mentioned it. The court could use it to enhance the sentence. Is it the government's position that these particular caliber of bullets would mean this is not – they aren't usual in this type of case? Well, Your Honor, these are highly dangerous – more dangerous caliber of bullets than what is typically seen where – and that also has to do with the weapon itself because the caliber directly relates to the bore of the rifle. But certainly these are calibers that are used in weapons of war as opposed to other types of more permissible weapons. So I think that was a proper thing for the court to hone in on. And the government – I don't think the government needs to prove here that that would take the case out of the mine run. It could or could not. But it certainly is a proper sentencing consideration, and the court was entitled to use it with other factors that do justify the variance by themselves, taking away both the bullet quantity and the bullet type, the firearm-specific recidivism, the community considerations, all those things the court mentioned. In the government's view, that's enough for this court to affirm the sentence on the basis that it was sufficiently justified, and that's consistent with Mercado Canizares. And if I may – I know I'm over my time, but I'd like to make a final point as to something you said earlier, Your Honor. I'd like to clarify. The claim that's being raised here on appeal is that the court did not sufficiently explain the upward variance. So there's no need to – and again, I'm relying on Mercado Canizares – to look at every single factor and determine whether it's a correct sentencing consideration or not. The court just needs to be satisfied. Yeah, but if one of its explanations, as is pointed out, is not permissible, in other words, because there's 31 bullets, it's not mine run. That was one of the explanations. If that's erroneous, as you're acknowledging it is erroneous – No – yes. I'm just having trouble seeing how the explanation as a whole can hold up. It doesn't mean that on this quandary of facts, you couldn't give an explanation for a variance this high. It's just that the explanation that was given seems to rest on a mistaken premise about our case law. Your Honor, again, Mercado Canizares is what we're relying on here. And as long as there's sufficient justification, then yes, the court affirmed. Thank you. Thank you, counsel. That concludes argument. I'm sorry. It does not. Please reintroduce yourself on the record. Good morning again, Jessica, on behalf of Mr. Rosa. I'm going to try and go quick. That was a lot. First to the breach. The government's proposed reading of Rosa Borges I that you can consider unreliable evidence as a basis among other factors to upwardly vary just is a non sequitur. You cannot consider unreliable evidence in a guideline sentence. It's been deemed unreliable by this court. So to somehow at the resentencing to warp that mandate to the district court and say, no, no, no, it's just in the context of an upward variance not only brings the variance possibility up to the court, but is improper. This court was clear it's unreliable. It should not have been used. Can you speak to the prejudice prong on the breach issue? Sure. So the March 30th allegations tainted the whole resentencing hearing. The issue here is that Mr. Rosa goes back to resentencing after having fought a well-fought resentencing hearing and is going under the belief, based on his contractual negotiations with the government, that he is going to be, once again, getting a lower half recommendation. The prejudice becomes that that's clearly not what happened and the government, in talking about the upward variance possibility and in referencing the unreliable March 30th allegations, then goes to a district court that it knows is inclined to do this and the result is, once again, an upward variance. That sounds to me like it's key to your prejudice argument that we conclude that the breach involved a suggestion to the district court to upwardly vary rather than the district court was advised that in sticking to the recommended lower half guideline sentence, it could rely on unreliable evidence. In other words, I can see why the defendant would want to pull out of the agreement if he was concerned that the prosecutor was going to actually argue for an upward variance. But if we read the record to say, well, the prosecutor may have been suggesting that you could rely on the unreliable evidence but never actually advocated for an upward variance in any way, are you still saying that your client, we can discern from this record, that your client would have wanted to pull out of the agreement? I think that the upward variance conversation comes at sentencing, so by then it's kind of late for Mr. Rosa. He's already been brought back to Puerto Rico for resentencing, going under that belief. But yes, I think the answer would be yes to the second half that he would have perhaps wanted to get out had he known that this upward variance talk was going to happen at resentencing hearing. And that's the prejudice because it's exactly the result that happened. So I'm asking, setting aside the upward variance talk, if the way this played out was the prosecutor says from start to finish, I want a lower half guideline sentence. That's all I'm advocating for. Defendant then says, well, then take out the stuff from the PSR. And the prosecutor says, no, you don't need to because you're allowed to rely on it so long as you don't solely rely on it. But never says do anything more than the lower half sentence. Do we have any reason to think that if that was the nature of the breach, the defendant would have actually wanted to put an end to the agreement? Yes, I think possibly because... Possibly, but we usually require a little bit more than that on plain error to show prejudice. I think that Mr. Rosa would have wanted to get out of the plea he had negotiated, especially having been through this already once, and now knowing about the memo, and then once the memo happened, coupling that with the advocacy by the government at the sentencing hearing. So, yes. And additionally, to go to some of the points apart from breach about what the district court considered, we take issue with the government's characterization that the district court multiple times said it wasn't considering the March 30th allegations because the Court of Appeals said it could not. That actually only happened once at the end of the sentencing after objection, as I mentioned in my initial argument. The district court never mentioned that it couldn't consider the March 30th allegations. It only, as I mentioned earlier, said that after objection. So, it talked about the high amount of ammunition as part of its sentencing colloquy multiple times, and then when confronted with it's outside the mine run, then it says, no, this is outside the mine run. So that's troublesome in itself. And as Ramos-Guerrero reminds us, a recitation of facts that are concerning or detailed right before it pronounced the sentence can give us a read into what the district court was thinking. Finally, Your Honors, I know I'm over my time, but briefly about the mix of factors. I want to be sure that we put before the court that even if this court determines that the 100 bullets were somehow not part of this resentencing, which we think clearly they were, it's pretty much the whole issue at resentencing. But even then, the sentence still couldn't stand. The district court, for multiple reasons, but the district court lists several reasons it deemed an upward variance appropriate here, but we are unable to untangle them and determine which of them would have been the sole reason for the upward variance or which one justified the extent of the upward variance. This was still a 19-month upward variance. And the practical effect of this is that Mr. Rosa has been in prison for 60 months, which is way beyond what the government originally agreed was a fair and just sentence under 3553A. So, if there are no other questions, thank you. Thank you, Counsel. That concludes our witness case.